793 P.2d 1247
**Ronald J. HIEB,**
**Plaintiff-counterdefendant-appellant,**

v.

**Dell N. MITCHELL and Lynn N. Mitchell, Defendants-counterclaimants-respondents.**

**No. 18103.**

Supreme Court of Idaho.

June 13, 1990.

Goodman & Duff, Rupert, for plaintiff-counterdefendant-appellant. Alan C. Goodman argued.

Ling, Nielsen & Robinson, Rupert, for defendants - counterclaimants - respondents. Roger D. Ling argued.

BAKES, Chief Justice.

This case deals with statutory redemption rights and procedures to effectuate a statutory redemption and subsequent redemption. Plaintiff appellant (Hieb) purchased real property at a foreclosure sale. Defendant respondent (Mitchell) purchased a quitclaim deed from Farmers Home Administration (FHA) which held a mortgage on the subject real property. Mitchell then attempted to redeem on the property, based upon the quitclaim deed. Hieb then purchased a judgment from First Security Bank on the same real property and attempted a subsequent redemption from Mitchell. Hieb then brought this suit in district court seeking a declaratory judgment that he was entitled to the property. Both parties moved for summary judgment, and the district court found that: (1) Mitchell was a redemptioner; (2) Mitchell correctly redeemed from Hieb as purchaser at the sheriff's sale; and (3) Hieb's subsequent redemption was ineffective. From this order, Hieb appeals.

On July 2, 1987, a decree of foreclosure was entered in the case of *Newcomb v. Knopp*. On August 6, 1987, the foreclosure sale was held, and the appellant (Hieb) was the successful purchaser at the sale. Hieb was not a party to the Newcomb foreclosure.

On August 1, 1988, shortly before the one-year period for redemption had expired, Mitchell purchased a quitclaim from the United States of America, acting through Farmers Home Administration (FHA), purportedly conveying all of FHA's interest in the subject real property to Mitchell. FHA had a mortgage on the subject real property which was given to secure an outstanding note. Mitchell executed and delivered to FHA a signed statement that by the quitclaim deed he was purchasing only the redemption rights of FHA in the subject property and not the note and mortgage of FHA which also covered other property. Mitchell alleges that the quitclaim deed was intended by FHA to convey only its right to redeem the property. The district court found that FHA could not convey this mortgage owing to certain federal regulations.

On August 3, 1988, Mitchell prepared a notice of intent to redeem and a demand for verified statement of rents and profits. These documents were recorded with the Cassia County recorder. Mitchell also caused duplicates of these documents to be served upon Hieb by the sheriff of Cassia County. On August 5, 1988, Hieb purchased from First Security Bank its judgment against Randy Knopp and recorded the judgment on the same day. Hieb then recorded his notice of intent to redeem from Mitchell based upon the First Security judgment.

On August 8, 1988, Mitchell received from Hieb an affidavit wherein Hieb itemized his rents and profits from the property since the foreclosure sale. On August 12, 1988, Mitchell executed in duplicate his notice of redemption, one of which was recorded in the records of the Cassia County recorder on August 12, 1988, and the other of which was caused to be served upon Hieb by the sheriff of Cassia County. On this same date, August 12, 1988, Mitchell prepared and executed all the other documents required to effect a proper redemption under the statute, and at the time Mitchell delivered to the sheriff of Cassia County his certified check in the sum of $49,081.55, the amount asserted by Hieb to be due to redeem from him as purchaser at the sale. Mitchell alleges that Hieb accepted the check in redemption of the property. Hieb denied that he accepted the check.

On August 12, 1988, this action was brought in district court by Hieb who sought declaratory judgment relief which would establish the rights and obligations as between himself and Mitchell. On August 22, 1988, Mitchell's attorney received a copy of a notice of subsequent redemption directed to the sheriff of Cassia County dated August 18, 1988. No money was tendered to the sheriff of Cassia County or to Mitchell with this notice of subsequent redemption. Hieb endorsed and signed over the check which he had previously received from Mitchell to the clerk of the court on August 18, 1988. On August 30, 1988, Mitchell received from the sheriff of Cassia County a sheriff's deed to the real property which was duly recorded.

Both parties eventually filed motions for summary judgment. The district court entered its initial opinion and order in February of 1989. Upon motion for reconsideration the district court entered a second opinion and order in April of 1989 holding that: (1) Mitchell was a redemptioner under I.C. § 11-401; (2) he properly redeemed the property from Hieb; (3) the sheriff properly issued to Mitchell a sheriff's deed to the property; and (4) Hieb had failed to properly effectuate a subsequent redemption of the property under the assigned rights received by Hieb from the third lienholder on the property, First Security Bank. Hieb has appealed from this ruling.

■ The foregoing facts present us with the following issues on appeal: (1) did the district court err in holding that Mitchell was a redemptioner; (2) did the district court err in holding that Mitchell correctly redeemed the property; and (3) did the district court err in holding that Hieb did not correctly redeem the property? Since we hold that Mitchell was not a redemptioner we do not reach the second and third issues.

I.C. § 11-401 reads in pertinent part:

**Redemption—Persons entitled to make.** —Property sold subject to redemption ... may be redeemed in the manner hereinafter provided, by the following persons, or their successors in interest:

1. The judgment debtor, or his successor in interest, in the whole or any part of the property.

2. *A creditor having a lien by judgment or mortgage on the property sold,* or some share or part thereof, subsequent to that on which the property was sold. The persons mentioned in the second subdivision of this section are, in this chapter, termed redemptioners.

(Emphasis added.)

Hieb argues that under this provision Mitchell cannot be a redemptioner because

Mitchell was not a "creditor having a lien by judgment or mortgage." Mitchell argues, on the other hand, that even though he did not possess a mortgage or lien, FHA transferred its right to redeem, independent of the mortgage held by FHA. The district court agreed with Mitchell, stating:

> In this case, FHA holds a property interest in the foreclosed property in the form of a mortgage. The mortgage carries with it the right to redeem. For good and valuable consideration, FHA assigned its right to redeem to the Mitchells. The right to redeem was the only interest FHA could transfer....

We disagree with the district court. It is clear that FHA did not and could not transfer its mortgage to Mitchell. As noted by the district court, "FHA's assignment was not approved by the Secretary of the Treasury, and an assignment of its mortgage would therefore be inoperative as violative of public policy." Mitchell agrees that FHA did not transfer its mortgage. Nevertheless, Mitchell argued, and the district court agreed, that FHA transferred its "right to redeem" without also transferring the mortgage. However, I.C. § 11–401 defines a redemptioner as "[a] creditor having a lien by judgment or mortgage." Where the language and meaning of a statute is clear we are confined to follow that meaning and neither add to nor take away by judicial construction. *St. Benedict's Hospital v. County of Twin Falls*, 107 Idaho 143, 686 P.2d 88 (Ct.App. 1984). Under the statute, I.C. § 11–401, the right to redeem is contingent upon possession of a lien or mortgage; it cannot exist without the mortgage and cannot be transferred independently therefrom. The district court itself acknowledged at one point that it is "the mortgage [which] carries with it the right to redeem."

Further support for this conclusion is found in I.C. § 11–403. That section delineates the requirements to effect a subsequent redemption and reads in pertinent part:

> [A]nother redemptioner may ... again redeem it from the last redemptioner on paying the sum paid on such last redemption with interest ... from the date of the last redemption and the amount of any assessment or taxes which the last redemptioner may have paid thereon, after the redemption by him with interest ..., *and in addition the amount of any liens held by said last redemptioner prior to his own,....*

(Emphasis added.) This provision clearly requires that a subsequent redemptioner pay, in addition to the amount paid by the first redemptioner, the amount of *any lien held by the last redemptioner.* This provision thereby reinforces I.C. § 11–401's definition that a redemptioner is one having a lien or mortgage. We therefore hold that under the statutes cited herein the quitclaim deed which the FHA executed to Mitchell did not transfer the redemption rights because the quitclaim deed did not assign the note and the mortgage.

We next consider whether Mitchell could qualify as a redemptioner by means other than those contemplated under the statutes. Mitchell contends that Hieb is estopped to deny the validity of FHA's transfer because Hieb accepted the payment of the redemption money from Mitchell. Mitchell supports his argument with the rule stated in *Bateman v. Kellogg*, 59 Cal.App. 464, 211 P. 46, 51 (1922), wherein the court stated, "[T]he rule is that, if the person from whom the redemption is made consents and accepts payment of the redemption money, it is as to him a valid redemption, even though the person making it be not qualified to redeem." Without questioning the validity of this rule, we note simply that Hieb did not in fact "accept" Mitchell's redemption money. The record in this case reveals that on August 17, 1988, Hieb received the redemption money by check from Mitchell. Thereafter, on August 18, 1988, Hieb tendered that money to the clerk of the district court in the declaratory judgment action by endorsing and delivering the check to the clerk. Thus, Hieb is not estopped to deny the validity of this transfer and Mitchell

cannot be deemed to be a redemptioner by virtue of this estoppel.

We therefore vacate the trial court's judgment and direct entry of summary judgment in favor of Hieb, quieting title based upon his purchase of the property at the sheriff's sale.

Costs to appellant. No attorney fees allowed.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, specially concurring and dissenting.

## I.

Having now been out of law school for a respectable time, I concede that I may be unaware of what is and is not taught, or perhaps more appropriately what is and is not learned, at law school. What I learned there, and do remember, is that the right of redemption, when there is such a right, is not an independent right. Rather, it is a right dependent upon a creditor's having acquired a lien either by a recorded judgment or by a recorded mortgage, and the right of redemption cannot be separated from the mortgage or the judgment, as the case may be. It is not susceptible to being independently transferred. Hence, I have concurred in the opinion for the Court authored by Chief Justice Bakes.

## II.

Mr. Hieb has been put to the expense of this litigation by the concerted action of a person, not the FHA, but a person purporting to have authority to quitclaim from the United States of America to Dell N. and Lynn N. Mitchell, husband and wife. The latter persons were most likely unaware that the quitclaim could not be done as it was done, but apparently relied on the person who purported to have that authority. One cannot condemn the Mitchells for trying to hang on to their "acquisition," and trying to convert it into ownership of the property which Mr. Hieb had purchased fair and square. However, under this scenario Mr. Hieb is clearly entitled to be made whole—meaning his expenses of litigation should be paid by the Mitchells, who in turn should seek to recoup them from the person executing the "government" quitclaim deed, their losses in attorneys' fees for their own attorney, and also what they have to pay to Mr. Hieb.

For the reason that complete justice is neither contemplated nor provided in the opinion for the Court, I am compelled to dissent.