769 P.2d 585

**EXCEL LEASING CO., an Idaho corporation, Plaintiff–Respondent,**

v.

**David CHRISTENSEN, Defendant–Appellant,**

and

**Sondra Christensen, wife of David Christensen, Defendant.**

No. 16820.

Court of Appeals of Idaho.

Feb. 6, 1989.

Petition for Review Denied May 22, 1989.

Todd D. Maddocks of Saltus, Martelle & Maddocks, Boise, for defendant-appellant.

Darrel W. Aherin of Aherin & Rice, Lewiston, for plaintiff-respondent.

SWANSTROM, Judge.

This appeal arises out of a judgment awarded Excel Leasing Company against David and Sondra Christensen based on the breach by David Christensen of two equipment leases. David Christensen raises several issues on appeal which may be summarized as follows: (1) whether the agreements between Excel and Christensen were leases or security agreements; (2) whether the trial court properly determined, for purpose of a credit allowed Christensen against damages for breach of the leases, the value of certain real property owned by Christensen and purchased at a foreclosure sale by Excel; and (3) whether the court erred in refusing to award punitive damages and costs to Christensen. We affirm.

In December, 1980, David Christensen and his then wife, Sondra, entered into a transaction with Excel Leasing Company of Lewiston, Idaho. Two documents entitled "Lease Agreement[s]" were signed. One agreement covered a 1979 International truck tractor; the second covered a 1979 Wesco flatbed trailer. The agreements were identical except for the rental amounts. Each was for a term of sixty months, requiring monthly rental payments. The monthly rental for both units totaled $1,901.63. Under the terms of the agreements, Christensen bore the responsibility of maintaining the equipment and paying for all accompanying operating expenses including insurance.

Before entering into the agreements, Excel asked Christensen to pay the rent due for the first and last months in advance.

Christensen was unable to make this advance payment. Excel then agreed not to insist on advance payment if it could receive additional security. Excel was given a second mortgage in the amount of $68,900—the indicated "capitalized cost" of the truck and trailer—on farm property owned by Christensen in Bingham County. Christensen took possession of the equipment in early December 1980. From this time until March 1981 Christensen failed to make any of the required rental payments. Excel then repossessed the equipment and filed suit against Christensen, seeking recovery of lost rental income and damages totaling $38,000.

Shortly after the filing of this complaint, the holder of the first mortgage on Christensen's farm property instituted a foreclosure action and obtained a judgment. At the foreclosure sale Excel, the second mortgagee, entered the high bid and purchased the property for $70,322.

At trial in the present action, Christensen disputed his liability and alleged that the equipment did not conform with guarantees previously made by Excel. Christensen argued that prior to entering into the agreements he had instructed Excel to make numerous repairs and modifications to the equipment. He contended that the equipment had not been repaired as directed and he presented evidence regarding the resultant mechanical problems and their accompanying expenses. Christensen claimed that he did not perform his obligations under the agreements due to these mechanical deficiencies of the equipment. The trial court was not persuaded. The court held that Christensen's difficulties were primarily the result of his own inexperience, his failure to make timely repairs after mechanical problems were discovered, and his failure to take advantage of manufacturer warranties that were still in effect.

Another issue arose in the calculation of damages awarded to Excel. The court rejected most of Excel's damage claim. The court determined that Excel was entitled only to termination of the agreements and to recovery of the accrued unpaid monthly

rentals for the time Christensen had the equipment prior to Excel's repossession. For these four months the court determined the lost rental was $7,606.52. This amount was offset by two credits. The first was the calculation by the court of the difference in the value of Christensen's farm property and the price paid by Excel at the foreclosure sale. The court found the reasonable value of Christensen's property to be $75,000. Subtracting Excel's purchase price of $70,322 left a credit of $4,678. The second credit was for the value of tools, truck gear and other personal property owned by Christensen totalling $2,056, which was taken by Excel when the equipment was repossessed. After allowing these two credits as offsets, the court found that Excel was entitled to a judgment for $868.52 with costs of $1,911.80. Excel has not challenged, in this appeal, the trial court's limited award of damages.

Christensen appeals, however, contending the district court erred in holding that Excel acted properly in repossessing the equipment. Christensen argues that the agreements between the parties did not constitute true leases but instead were intended as security agreements in a sales transaction. I.C. § 28-9-105(1). Therefore, he contends, Excel was bound to comply with the U.C.C. and to dispose of the collateral—the truck and trailer—in a commercially reasonable manner before it was entitled to recover any sums from Christensen. Christensen argues that the intent of the parties when the agreements were made was to provide a longterm lease with an option to purchase available at the end of the lease term. The intent of the parties, he contends, was that the lessee would acquire equity in the equipment throughout the term of the lease. Christensen further contends that the repossession of the equipment was commercially unreasonable under the provisions of the Idaho Code governing security agreements and in particular I.C. §§ 28-9-503 and 28-9-504. He thus argues that Excel should be denied the right to collect a "deficiency."

I

■ We address first the question of whether the agreements actually were intended as security agreements rather than as leases. Idaho Code § 28-1-201(37) defines "security interest" as follows:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.... Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest".... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Under this code section, as interpreted by previous Idaho Supreme Court decisions, it is necessary to determine whether by the terms of an agreement the parties intended the agreement as one for security. See W.L. Scott, Inc. v. Madras Aerotech, Inc., 103 Idaho 736, 653 P.2d 791 (1982). An important factor is the effect of any purchase option contained in the agreement. A relevant inquiry is whether provisions enable the "lessee" to acquire a substantial equity in the property either during the term or at its end by allowing transfer of ownership for nominal consideration in addition to rental paid. Eimco Corp. v. Sims, 100 Idaho 390, 598 P.2d 538 (1979).

Here, the trial court in its memorandum decision made an implicit finding that the parties intended the agreements to be a lease. Findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Clear error will not be deemed to exist if the findings are supported by substantial evidence. Rasmussen v. Martin, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). We do not find such error. It is clear from the terms of the agreements between Christen-

sen and Excel, that they were not intended as security agreements.

The agreements expressly state that the "lessee" is given no option to purchase. They also state that the "lessee" has no claim to ownership or any right or interest in the property other than as lessee. Nevertheless, other language in the agreements does give the lessee an opportunity to purchase the property. This opportunity to purchase was restricted, as we will explain. Moreover, the inclusion or exclusion of the purchase option does not itself solely determine the existence or absence of a security agreement. I.C. § 28–1–201(37); *In re Tillery,* 571 F.2d 1361 (5th Cir.1978).

As noted above, a further characteristic which may indicate the existence of a security agreement is language creating an equitable or beneficial interest in the lessee. According to the agreements in this case, Christensen could terminate at any time after twelve months, if he was not in default, and return the equipment to Excel. If this occurred Excel would obtain "two or more cash wholesale offers" for the equipment. Christensen would have the opportunity to submit a higher bid. However, if Christensen's bid was less than the "depreciated value" of the equipment, he would be required to pay the difference "as additional rental." "Depreciated value" was defined and could be calculated during the lease term from figures given in the lease. The calculation required subtracting the accumulated "monthly depreciation reserve" from the stated "capitalized cost" of the equipment. It is not apparent from the agreements, nor has Christensen explained, how he would acquire any equity or interest in the property during the term of the lease as a result of these provisions.

The agreements recited that, at the end of the five-year term, the "depreciated value" of the truck and trailer would be $5,300 and $1,590 respectively, which was equal to ten percent of the "capitalized cost." There was evidence showing that the equipment could be worth substantially more than these figures if the equipment was in good condition. Nevertheless, this recital in the agreements belies any argument that Christensen had an option to purchase the equipment at a nominal sum or would become the owner of the equipment for no additional consideration at the end of the agreements' terms.

We conclude the trial court was correct in its characterization of the agreements as leases. In turn, the rights and duties of the parties upon default were determined by the provisions of the agreements and not by the (Idaho) U.C.C. covering security agreements. We also agree with the district court that the repossession by Excel was proper under the agreements. Christensen's failure to make rental payments gave Excel the right to terminate the agreements and to repossess the equipment.

We also reject Christensen's arguments that the means employed to repossess, and ultimately to sell the equipment, were improper. Christensen's arguments that in the course of repossessing the equipment Excel unlawfully breached the peace are not supported by the evidence in the record. A verbal altercation cited by Christensen as a breach of the peace did not occur until after the equipment had been repossessed by Excel, and as a result does not affect the legality of the repossession.

Finally, the damages awarded to Excel were not related to any sale of collateral or resulting "deficiency" assessed against Christensen, as he contends. Excel was awarded only the accrued unpaid rental owing under the lease for the time that Christensen had possession of the leased equipment. During this time he drove the equipment 28,000 miles without paying Excel anything for its use.

Christensen's other contentions regarding Excel's disposition of the equipment are also unavailing. At trial Excel attempted to prove its damages for lost rental, repossession expenses and costs of repairs. When it repossessed the equipment, Excel was under a duty to mitigate its losses of future rental by re-leasing or selling the equipment and setting off the amount received against the damages sustained by Excel by reason of Christensen's

breach of the lease. *See Industrial Leasing Corporation v. Thomason,* 96 Idaho 574, 532 P.2d 916 (1974). Christensen contends that Excel acted unreasonably after repossessing the equipment by re-leasing it to a third party before its eventual sale. Even if Christensen's contentions in this regard were true, he has not shown how he has been harmed. The trial court awarded no damages for lost future rental. Christensen has not shown how Excel reasonably could have mitigated the damages awarded here for rental already earned under the lease.

## II

■ We turn now to Christensen's second issue, that of the trial court's valuation of the real property purchased by Excel at the foreclosure sale. Christensen argues that the trial court erred in its determination that the reasonable value of the property was only $75,000. Christensen contends that insufficient evidence was presented to the trial court to support a finding of the property's reasonable value and that the value ultimately determined by the court was below the range of values reflected in the evidence.

A review of the evidence shows that the trial court was presented with three independent sources of information regarding the value of the property. The first was the testimony of an appraiser hired by Excel. The appraiser determined that the value was less than the approximately $71,000 paid by Excel at the foreclosure sale. A second source was the purchase price of $62,550, paid by Christensen for the property in 1978. The third source was the testimony of Christensen that, in his opinion, the property at the time of the sale was in fact worth $120,000 to $140,000.

We will not disturb a trial court's finding of fact on appeal unless it is found to be clearly erroneous. The trial court in reaching a determination of value is not bound to adopt a particular value presented by an appraiser but instead may set the amount at an intermediate figure which is supported by a reasonable view of the total evidence received. *See Farber v. Howell,*

111 Idaho 132, 721 P.2d 731 (Ct.App.1986); *Logan v. Grand Junction Associates,* 111 Idaho 670, 726 P.2d 782 (Ct.App.1986).

The trial court's determination here was clearly within the range of values presented in evidence. While the value ultimately determined by the court was at the lower end of the range presented, this determination is not unsupported by evidence in the record. We note that in addition to the values presented, the court had before it testimony and evidence regarding both the physical characteristics of the property as well as the sales potential and value of comparable property. We conclude that the finding of the court is supported by substantial evidence and should not be disturbed on appeal.

## III

Christensen also has raised two issues regarding the award of costs to Excel and the failure to award punitive damages to Christensen. After a consideration of these issues we find them to be without merit and dismiss them without discussion.

■ Both parties have requested attorney fees on appeal. An award of attorney fees may be granted under I.C. § 12–121 and I.A.R. 41 on appeal to the prevailing party. Such an award is appropriate when this Court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979).

We determine that fees should be granted in favor of Excel. Christensen has failed on appeal to present any significant issue regarding a question of law. In addition, no findings of fact made by the district court were clearly or arguably unsupported by substantial evidence. This Court has not been asked to establish any new legal standards or modify existing ones; instead, the focus of this case has been the application of settled law to the facts. In such a case, we will deem the appeal to be unreasonable and without foundation. *See, e.g., T–Craft Aero Club, Inc. v. Blough,*

102 Idaho 833, 642 P.2d 70 (Ct.App.1982). We will, therefore, award attorney fees to respondent Excel in an amount to be determined under I.A.R. 41(d).

The judgment of the district court is affirmed. Costs and attorney fees on appeal to respondent Excel.

WALTERS, C.J., and BURNETT, J., concur.